J-A12018-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA

v.

MONTY WILLIAM JACKSON II

Appellant

:
:
:
:
:
:
:
:
:
:
:

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 425 WDA 2021

Appeal from the Judgment of Sentence Entered July 28, 2020
In the Court of Common Pleas of Greene County
Criminal Division at CP-30-CR-0000259-2019

BEFORE:   MURRAY, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:                 **FILED: May 13, 2022**

Monty William Jackson, II (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of persons not to possess firearms.[1]  Upon review, we affirm.

The trial court summarized the relevant facts as follows:

> On June 7, 2019, [Appellant] was visiting with Kell[i] Murphy at her home in Carmichaels Borough in Greene County, Pennsylvania.  Gary Varesko [(Mr. Varesko or Varesko)] was the main witness for the Commonwealth … Mr. Varesko was the step-father of Kelli Murphy[.]  Mr. Varesko testified that Kelli Murphy was an alcoholic and that he would frequently visit [her] home … to monitor Ms. Murphy and to attempt to prevent Ms. Murphy from consuming alcohol.
>
> On June 7, 2019, Mr. Varesko entered Kelli Murphy's residence and according to the testimony of Mr. Varesko, noticed

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6105(a)(1).

a book bag that he did not recognize to be Ms. Murphy's. He called out for Ms. Murphy and then … opened the book bag. … Mr. Varesko [also] retrieved a [handgun in plain view, located on top of] a heater in the living room[, which also did not belong to Ms. Murphy.] According to the testimony of Varesko, [Appellant] then appeared from another room of the residence … and yelled at Varesko while Varesko was in possession of [the handgun,] which the jury determined to be [Appellant's]. [Appellant] testified [at trial] and denied possession of the firearm. Varesko then describe[d] [a scuffle] where [Appellant] wrestled Varesko for control of the firearm and at some point, Mr. Varesko … held [Appellant] in a headlock. In the struggle for the gun, the gun [] struck Mr. Varesko in the bridge of the nose and [Appellant] ultimately ran from Ms. Murphy's residence and was later arrested by Ryan Campbell of the Carmichaels Borough Police [Department].

As a result[, Appellant] was charged with simple assault, recklessly endangering [another person (REAP)], aggravated assault, a summary offense of disorderly conduct, and a charge of persons not to possess, use, manufacture, control, sell or transfer firearms, a felony of the first degree.

After the incident on June 7, 2019, and unrelated to these events, Ms. Kell[i] Murphy passed away prior to the trial in this matter.

Trial Court Opinion, 6/25/21, at 4-5 (footnote citations to record omitted).

Prior to trial, Appellant filed a motion *in limine* to preclude any reference to Varesko being a retired police officer. Appellant alleged that such reference would constitute improper character evidence.[2] **See** N.T., 1/22/20, at 7-9. The Commonwealth countered that Varesko's prior employment was relevant

_____

[2] The motion is not in the record. However, the trial court stated that defense counsel "has moved to preclude the Commonwealth from introducing at trial that Mr. Varesko is a retired police officer. … There's a written … motion." N.T., 1/22/20, at 7; **see also id.** at 11 (trial court stating, "It's just a one-page document that's not … docketed but it will be docketed[.]").

to establish his familiarity and experience with firearms, and further asserted the information would not be offered to bolster Varesko's credibility. *Id.* at 8-9 (prosecutor arguing, "we're trying to establish knowledge, Your Honor. And [Varesko's] profession establishes that knowledge.").

The trial court denied Appellant's motion *in limine* on the record prior to the commencement of trial. The court stated,

> [Appellant's counsel] has moved to preclude the Commonwealth from introducing at trial that Mr. Varesko is a retired police officer. I'm going to deny that request. … [T]he attorney for the Commonwealth[] … believes that Mr. Varesko's experience as a police officer may be critical in … [Varesko's] identifying what is alleged to have been a firearm. But I want to remind the Commonwealth and the defense that … Varesko is not … going to be qualified as an expert. So, he's not going to be able to testify in that capacity. If you ask [Varesko] what he is and that contributes to his … knowledge as an eyewitness, that's possible. But … if [defense counsel] makes an objection I'll give an instruction … during the trial as to the fact that [Varesko] is a … lay witness and to be treated the same as any other person.

*Id.* at 7-8.

Immediately after the prosecutor's opening statement, Appellant's counsel objected to the prosecutor identifying Varesko as a retired police officer, and moved for mistrial. *Id.* at 26-27. Though the court overruled the objection, *id.* at 28, the court subsequently instructed the jury it was required to "consider [Varesko's] testimony the way you consider everybody else to include bias, prejudice, *et cetera*." *Id.* at 63.

During the Commonwealth's case-in-chief, Varesko testified as follows:

Q [Prosecutor]: So, you picked … the gun up. And then you said that you had intended to leave but what occurred next?

- 3 -

A: [Appellant] came running at me and told me to give [him] his f'ing gun.

* * *

Q: Okay. And then as [Appellant] came running to the dining room, what occurred next?

A: After he told me to give [him] his f'ing gun, I replied you are not allowed to have a gun. **You're a convicted felon**.

*Id.* at 57-58 (emphasis added).[3] Appellant immediately moved for mistrial.

*Id.* at 58. The court declined to grant a mistrial, but gave the following curative instruction to the jury:

THE COURT: … [F]irst of all, Mr. Varesko, answer the question that's put to you and quit volunteering things, okay? … Number two, the last thing that was said was [Mr. Varesko] said I know [Appellant is] a convicted felon. That is for you to decide. That is not for Mr. Varesko to decide nor … are you able to use what he's saying [on] the witness stand as evidence of anything whatsoever in terms of conviction. It is … not right. It may or may not be proven by the Commonwealth, but it is their burden to prove that. It is not being proven in any way by what Mr. Varesko just said. Nor does Mr. Varesko have any law enforcement power whatsoever, nor d[id] Mr. Varesko have any law enforcement power on the day he [encountered Appellant in Ms. Murphy's home]. [Mr. Varesko] was acting strictly as a citizen

---

[3] The trial court explained: "From the outset of trial, it was clear Mr. Varesko believed [Appellant] was a poor influence on Ms. Murphy, and in the opinion of Mr. Varesko, [Appellant's] presence threatened the sobriety of Ms. Murphy, Mr. Varesko's step-daughter. … [A] fair reading of the evidence and the statements of Mr. Varesko would quickly reveal Mr. Varesko's hostility toward [Appellant]." Trial Court Opinion, 6/25/21, at 5-6 (footnote citation omitted). The court further stated: "Numerous objections were made throughout the testimony of Mr. Varesko, instructions were given by the [trial c]ourt, and also the [c]ourt frequently admonished Mr. Varesko as a result of certain objections or as a result of the responses by Mr. Varesko to questions asked of him." *Id.* at 7 (footnote citation omitted).

and I'll give you a different instruction about that more. You consider his testimony the way you consider everybody else['s.]

*Id.* at 62-63; *see also id.* at 63 (trial court reprimanding the prosecutor: "ask the questions in a way that Mr. Varesko answers them as to what happened.").

After the close of the Commonwealth's case, the trial court instructed the jury as to Appellant's prior conviction:

The Commonwealth has introduced [evidence] … that [Appellant] was convicted of a crime of robbery. That … is a crime that if you were convicted of that it would be one element of [persons not to possess firearms] that would need to be proven by the Commonwealth beyond a reasonable doubt. … You cannot use … evidence of that conviction to show any propensity of the crime. You can't use that … for any other reason [] than to prove that one element.

*Id.* at 152-53. Thereafter, the jury convicted Appellant of persons not to possess firearms; the jury acquitted Appellant of simple assault, aggravated assault, REAP, and disorderly conduct.

On July 28, 2020, the trial court sentenced Appellant to 5-10 years in prison.[4] Appellant timely filed a post-sentence motion, asserting that: the jury's verdict was against the weight and sufficiency of the evidence; the sentence was excessive and an abuse of discretion; and the court erred with respect to certain evidentiary rulings and jury instructions. Post-Sentence Motion, 8/7/20, at ¶¶ 1-4. On August 10, 2020, the trial court appointed new

_____

[4] The sentence is in the standard range of the guidelines, and imposed with the court having the benefit of a presentence investigation report (PSI). *See* N.T., 7/28/20, at 3 (trial court stating, "A [PSI] has been prepared and I've reviewed it").

counsel (Counsel) for Appellant, and gave Counsel 20 days to file supplemental post-sentence motions. However, Counsel never filed supplemental post-sentence motions. The court, for reasons not of record, subsequently permitted Counsel to withdraw.

On January 11, 2021, Appellant timely filed a *pro se* petition pursuant to the Post Conviction Relief Act (PCRA). **See** 42 Pa.C.S.A. §§ 9541-9546; **see also** PCRA Petition, 1/11/21, at ¶¶ 11-13 (claiming ineffectiveness based on Counsel's failure to file supplemental post-sentence motions). Appellant filed a supplemental *pro se* PCRA petition on January 22, 2011, seeking reinstatement of his direct appeal rights. The court appointed PCRA counsel, and the Commonwealth filed an answer to Appellant's PCRA petition on February 18, 2021. By order entered February 26, 2021, the court denied Appellant's pending August 7, 2020, post-sentence motion,[5] but reinstated his direct appeal rights. Order, 2/26/21, at 1-2.

Appellant timely appealed on March 24, 2021.[6] **See Commonwealth v. Perry**, 820 A.2d 734, 735 (Pa. Super. 2003) ("where the clerk of courts

---

[5] The clerk of courts never entered an order denying Appellant's August 7, 2020, post-sentence motion by operation of law, pursuant to Pa.R.Crim.P. 720(B)(3)(c) ("When a post-sentence motion is denied by operation of law, the clerk of courts shall [] enter an order on behalf of the court, and … shall serve a copy of the order on the" parties).

[6] Appellant purports to appeal from the February 26, 2021, order. However, an appeal "from an order denying a post-trial motion is procedurally improper because a direct appeal in a criminal proceeding lies from the judgment of
*(Footnote Continued Next Page)*

does not enter an order indicating that the post-sentence motion is denied by operation of law and notify the defendant of same, a breakdown in the court system has occurred and we will not find an appeal untimely under these circumstances"); ***Commonwealth v. Braykovich***, 664 A.2d 133, 135-38 (Pa. Super. 1995) (excusing facially untimely notice of appeal where clerk of courts never entered order denying appellant's post-sentence motions by operation of law, under predecessor to Pa.R.Crim.P. 720(B)(3)(c), ***supra***). Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents six issues for our consideration:

I.    Was the verdict, as it pertains to the conviction of person not to possess, use, manufacture, control, sell, or transfer firearms, against the sufficiency of the evidence?

II.   Was the verdict, as it pertains to the conviction of person not to possess, use, manufacture, control, sell, or transfer firearms, against the weight of the evidence?

III.  Was the denial of Appellant's counsel's motion *in limine* to exclude identification of the victim as a former police officer appropriate given the circumstances?

IV.   Was the denial of Appellant's counsel's motion for mistrial due to the victim's testimony identifying the Appellant as a felon appropriate given the circumstances?

V.    Was the denial of Appellant's counsel's motion for mistrial due to the District Attorney's exaggeration of the evidence in his closing remarks appropriate given the circumstances?

---

sentence." ***Commonwealth v. Gilliam***, 249 A.3d 257, 264 n.5 (Pa. Super. 2021).  We have corrected the caption.

> VI. Was the sentence, as it pertains to the conviction of person not to possess, use, manufacture, control, sell, or transfer firearms, against the weight of the evidence?

Appellant's Brief at 6 (issues reordered).

Appellant first argues the Commonwealth failed to present sufficient evidence for the jury to convict him of persons not to possess firearms. *See id.* at 16-19. We are mindful of our standard of review:

> When reviewing a sufficiency of the evidence claim, this Court must view the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to the Commonwealth as verdict winner, and we must determine if the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. This Court may not substitute its judgment for that of the factfinder. If the record contains support for the verdict, it may not be disturbed. Moreover, a jury may believe all, some or none of a party's testimony.

*Commonwealth v. Burns*, 765 A.2d 1144, 1148 (Pa. Super. 2020) (citations omitted). The testimony of a single witness, even if uncorroborated, may constitute sufficient evidence to support a conviction. *Gilliam*, 249 A.3d at 268.

The Crimes Code defines persons not to possess firearms, in relevant part, as follows:

> A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).

Instantly, Appellant does not dispute that he was convicted of an enumerated offense in 18 Pa.C.S.A. § 6105(b). **See** Appellant's Brief at 17; **see also** N.T., 1/22/20, at 152-53. He argues "the testimony provided was insufficient to establish the other element, that the Appellant was actually in possession of the firearm." **Id.** at 17. Appellant asserts, "Mr. Varesko's testimony was inconsistent and clearly exhibited malice towards [Appellant,] … [w]hile [Appellant's] testimony was clear about never seeing or possessing a firearm[.]" **Id.** at 18. Appellant also emphasizes: "No other physical evidence was presented to establish [Appellant] was in possession of a firearm on the evening in question." **Id.**

To the extent Appellant complains of Varesko's purportedly inconsistent testimony, and asks us to credit Appellant's trial testimony over that of Varesko, he assails the weight of the evidence. **See Commonwealth v. Melvin**, 103 A.3d 1, 43 (Pa. Super. 2014) ("An argument regarding the credibility of a witness'[] testimony goes to the weight of the evidence, not the sufficiency of the evidence."); **Commonwealth v. Trinidad**, 96 A.3d 1031, 1038 (Pa. Super. 2014) ("variances in testimony go to the credibility of the witnesses and not the sufficiency of the evidence." (citation omitted)). Our Supreme Court has explained an appellant's "challenge to the sufficiency of the evidence must fail" where he phrases an issue as a challenge to the sufficiency of the evidence, but the argument that appellant advances

goes to the weight of the evidence. ***Commonwealth v. Small***, 741 A.2d 666, 672 (Pa. 1999).

When a defendant did not have actual possession of the contraband, the Commonwealth is required to establish that he constructively possessed it. ***See Commonwealth v. Parrish***, 191 A.3d 31, 36 (Pa. Super. 2018) (in firearm possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession); ***see also*** Commonwealth Brief at 7 ("The Commonwealth will concede that at trial, no evidence was shown that a gun was found on Appellant."). We have explained:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. … We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. … To aid application, we have held that constructive possession may be established by the totality of the circumstances.

***Commonwealth v. Cruz***, 21 A.3d 1247, 1253 (Pa. Super. 2011) (citation omitted); ***see also Commonwealth v. Johnson***, 26 A.3d 1078, 1094 (Pa. 2011) ("circumstantial evidence may be used to establish constructive possession of [contraband]."). However, a defendant's mere presence does not establish constructive possession of a weapon. ***Commonwealth v. Vargas***, 108 A.3d 858, 869 (Pa. Super. 2014) (*en banc*); ***see also Parrish***,

191 A.3d at 37 (the location and proximity of an actor to contraband alone is not conclusive of guilt).

Here, the evidence adduced at trial, properly viewed in the light most favorable to the Commonwealth as verdict winner, established that Varesko lived near his stepdaughter, Ms. Murphy, who passed away shortly before trial. N.T., 1/22/20, at 32-33. Varesko had keys to Murphy's residence and frequently checked on her because she was an alcoholic. *Id.* at 34-36. On the evening in question, when Varesko entered the front door of Murphy's residence, he saw items he knew did not belong to her, including a bookbag and shoes. *Id.* at 39-40. Varesko called out to Murphy, but she did not reply. *Id.* at 40. Varesko eventually located Murphy, who was in the shower. *Id.* at 46. Varesko then saw a gun in plain view on a heater in the living room, next to a Pennsylvania identification card bearing Appellant's name and picture; Varesko picked up both items. *Id.* at 46, 48, 88, 99; *see also id.* Commonwealth Ex. 4 (Appellant's Pennsylvania identification card). Varesko, a retired Maryland State Trooper, described his experience with firearms, and testified that the gun on the heater was not a toy and had weight to it. *Id.* at 52-53, 87.

Varesko also testified Murphy did not own any firearms. *Id.* at 56. Prior to her death, Murphy executed a written police statement confirming she did not own a firearm, and did not see a gun in her home on the date in question. *Id.* at 144; Commonwealth Ex. 8.

Varesko testified he picked up the gun, intending to leave Murphy's residence with it and call police. *Id.* at 50, 55, 65. As Varesko was leaving, Appellant appeared and "came running at [Varesko] and **told me to give me his f'ing gun**." *Id.* at 57 (emphasis added); *see also id.* at 101 (Varesko testifying that Appellant said, "give me my fucking gun."). A physical altercation ensued. *Id.* at 65 (Varesko testifying Appellant "tried taking the gun from my right hand. … I got him in a headlock. … And we scuffled. … [Appellant] hit me in the head with the gun and cracked my head open."); *see also id.* at 106. Appellant eventually got the gun from Varesko and fled. *Id.* at 67, 73-74, 101.

Contrary to Appellant's claim, we conclude the evidence was sufficient for the jury to find, beyond a reasonable doubt, that Appellant constructively possessed the gun. *See*, *e.g.*, *Commonwealth v. Hopkins*, 67 A.3d 817, 820-21 (Pa. Super. 2013) (viewed in totality, the facts and circumstances supported a finding that defendant constructively possessed drugs and gun); *cf. Commonwealth v. Hamm*, 447 A.2d 960, 962 (Pa. Super. 1982) (Commonwealth failed to prove defendant constructively possessed gun police found on passenger side of car he was driving, with three passengers, because defendant could not have seen the gun and there was no evidence he knew of its presence). Moreover, the jury could weigh Appellant's flight as consciousness of guilt. *See Commonwealth v. Perez*, 220 A.3d 1069, 1078 (Pa. Super. 2019) (*en banc*) (flight from the scene of a crime can constitute

- 12 -

circumstantial evidence of consciousness of guilt); ***Commonwealth v. Hudson***, 955 A.2d 1031, 1036 (Pa. Super. 2008) (same).  Finally, it bears repeating that the jury acquitted Appellant of the majority the charges.  Thus, the trial court did not abuse its discretion in rejecting Appellant's sufficiency claim.

In his second issue, Appellant contends the jury's verdict was against the weight of the evidence, and "the trial court abused its discretion in finding that the verdict of the jury did not shock the conscience."  Appellant's Brief at 14.  Appellant argues he

> provided testimony to the jury that he was never in possession of any firearm, never used one in his scuffle with Mr. Varesko, and never saw one in [Ms. Murphy's] residence.  This testimony was clear and concise, as opposed to Mr. Varesko's testimony. According to Mr. Varesko's testimony, though he was able to see what he alleges to be a small handgun on a heating register inside the residence, he was unclear of the color of the handgun.

***Id.*** at 18.

"When reviewing a challenge to the weight of the evidence, we review the trial court's exercise of discretion."  ***Commonwealth v. Clemens***, 242 A.3d 659, 667 (Pa. Super. 2020) (citation omitted).  For an appellant to prevail on a challenge to the weight of evidence, he must establish that the evidence supporting a conviction is "so tenuous, vague, and uncertain that the verdict shocks the conscience of the court."  ***Commonwealth v. Akhmedov***, 216 A.3d 307, 326 (Pa. Super. 2019) (*en banc*) (citation omitted).  "The weight of the evidence is exclusively for the finder of fact, who is free to believe all,

none, or some of the evidence and to determine the credibility of the witnesses." ***Clemens***, ***supra*** at 667 (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of evidence[.]" ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013).

We discern no abuse of the trial court's discretion in rejecting Appellant's weight claim. Appellant improperly asks us to substitute our judgment for that of the jury, and credit his version of events over Varesko's. ***See***, ***e.g.***, ***Commonwealth v. Rabold***, 920 A.2d 857, 860 (Pa. Super. 2007) ("As an appellate court, we cannot substitute our judgment for that of the finder of fact."). Further, to the extent there were conflicts in the testimony (*e.g.*, Varesko's description of the color of the gun and Appellant's testimony that the gun was not his), the jury ostensibly accepted Varesko's testimony, and discredited Appellant's. ***See***, ***e.g.***, Trial Court Opinion, 6/25/21, at 8, 9 (stating, the "jurors, as the finder of facts, had the opportunity to observe Mr. Varesko, to observe [Appellant, and] to properly consider bias, prejudice or motives of all witnesses to include Mr. Varesko," and "[i]t is not unusual that witnesses testifying at a jury trial provide inconsistent testimony."); N.T., 1/22/20, at 234-36 (trial court instructing jury it had sole responsibility to make credibility determinations and weigh conflicts in testimony). We may not assume the role of factfinder and disturb the jury's credibility

- 14 -

determinations. *See Rabold*, 920 A.2d at 861 (rejecting weight claim where appellant essentially asked this Court to reassess the credibility of witnesses).

In his third issue, Appellant argues the trial court erred in denying his motion *in limine* to exclude identification of Varesko as a retired police officer, which "carried no relevance to the case and would only be used to bias a jury into giving more credibility to his testimony than would normally be provided to a lay person."  Appellant's Brief at 20.  Appellant claims the court's denial "was wholly unreasonable, … and prejudiced the Appellant's ability to present a proper defense at trial."  *Id.* at 21.

We review orders denying motions *in limine*, and granting the admission of evidence, for an abuse of discretion.  *Commonwealth v. Mangel*, 181 A.3d 1154, 1158 (Pa. Super. 2018).  "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous."  *Commonwealth v. Johnson*, 42 A.3d 1017, 1027 (Pa. 2012) (citation omitted).

Regarding opinion testimony by a lay witness, Pa.R.E. 701 provides:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

**(a)** rationally based on the witness's perception;

**(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

- 15 -

> **(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

*Id.*; *cf.* Pa.R.E. 702 (governing expert testimony). A lay witness "is permitted to express an opinion on a matter falling within the realm of common knowledge, experience or understanding." *Commonwealth v. Boczkowski*, 459, 846 A.2d 75, 97 (Pa. 2004); *see also* Pa.R.E. 602 (a witness may testify to matters within his or her personal knowledge). We have defined lay testimony as testimony "intended to describe something that jurors otherwise had not been able to experience for themselves, by drawing upon the sensory and experiential observations that the witness made firsthand." *Commonwealth v. Harper*, 230 A.3d 1231, 1242 (Pa. Super. 2020) (citation omitted).

Appellant's claim also implicates character evidence, which is governed by Pa.R.E. 404(a). This Rule provides: "**(1) Prohibited Uses.** Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait[.]" Pa.R.E. 404(a)(1).

The Commonwealth contends Appellant's challenge is meritless:

> Mr. Varesko testified as to the look of the gun, the weight of the gun, the opening of the barrel, and to being hit with the gun. N.T., 1/22/20, at 87, 117-18, 123, 126, 127-28. Mr. Varesko's characterization was an opinion, but not based in any specialized or scientific knowledge. Rather, he testified to facts that supported his ultimate lay-person opinion that what he observed and felt was a firearm. This opinion must be based on some prior lived experience, in this case, Mr. Varesko was a former police officer, had fired over 1,000 rounds through firearms, and owned

a firearm. *Id.* at 52-55. In a country with the Second Amendment, gun stores in every town, and ownership levels that are the highest in the world, no reasonable argument can be made that an opinion on whether a firearm is real is specialized, scientific, or other expert opinion.

Commonwealth Brief at 16 (citations modified).

Upon review, we are persuaded by the Commonwealth's argument and discern no abuse of the trial court's discretion in denying Appellant's motion *in limine*. The court determined "the mention that Mr. Varesko was a retired police officer was not offered to show any character testimony nor was it otherwise improper." Trial Court Opinion, 6/25/21, at 6 (footnote omitted); *see also id.* at 8 (rejecting Appellant's claim that "somehow the mere mention of Mr. Varesko's former career as a law enforcement officer would automatically or unduly prejudice the jurors against [Appellant] or lend great credence to the testimony of [Mr.] Varesko."). Furthermore, in response to Appellant's motion *in limine*, the trial court instructed the jury that Varesko was not testifying as an expert, and the jury was required to "consider [Varesko's] testimony the way you consider everybody else[.]" N.T., 1/22/20, at 63; *see also id.* (court instructing the jury that Varesko "was acting strictly as a citizen"). The law presumes that a jury will follow a trial court's instructions. *Commonwealth v. Speight*, 854 A.2d 450, 458 (Pa. 2004). Thus, the trial court did not err. *See*, *e.g.*, *Commonwealth v. Yedinak*, 676 A.2d 1217, 1221 (Pa. Super. 1996) (court did not err in admitting lay opinion testimony by police officer on issue of intoxication and inability to drive

safely where opinion was based on personal observations of defendant's physical appearance and behavior, combined with officer's extensive narcotics training and experience in drug arrests); *cf. Harper*, 230 A.3d at 1242 (court erred in admitting supposed lay testimony from police officer regarding whether gunshot wound was self-inflicted, holding the "testimony was beyond the scope of lay testimony permitted by Rule of Evidence 701(c). An opinion that a gunshot wound was self-inflicted would require specialized expert medical and forensic training. *See* Pa.R.E. 702(c)."). Appellant's third issue does not merit relief.

In his fourth issue, Appellant claims the trial court erred in denying his motion for a mistrial after Varesko "indicated that the Appellant was a convicted felon and was unable to possess a firearm." Appellant's Brief at 22. Appellant argues:

> Along with permitting the classification of Mr. Varesko as a retired State Trooper, these statements in front of the jury provide a significant bias and prejudice towards the Appellant which were either not relevant to the case, or introduced by [a proper] witness.

*Id.*

We review a denial of a motion for mistrial for an abuse of discretion. *Commonwealth v. Chamberlain*, 30 A.3d 381, 422 (Pa. 2011). We have explained:

> "In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial." *Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa.

- 18 -

Super. 2009) (citation omitted). "A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." ***Chamberlain***, 30 A.3d at 422 (citation and quotation marks omitted); ***see also Commonwealth v. Laird***, 988 A.2d 618, 638 (Pa. 2010) (noting that a mistrial is an extreme remedy). It is also settled that **a mistrial is not necessary where cautionary instructions are adequate to overcome any potential prejudice**. ***Commonwealth v. Spotz***, 716 A.2d 580, 593 (Pa. 1998); ***Commonwealth v. Leap***, 222 A.3d 386, 392 (Pa. Super. 2019) (same).

***Gilliam***, 249 A.3d at 274 (emphasis added; some citations modified). Further, we "must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required." ***Commonwealth v. Manley***, 985 A.2d 256, 266 (Pa. Super. 2009) (citation omitted).

"[W]hen dealing with a motion for mistrial due to a reference to past criminal behavior, the nature of the reference and **whether the remark was intentionally elicited** by the Commonwealth are considerations relevant to the determination of whether a mistrial is required." ***Commonwealth v. Kerrigan***, 920 A.2d 190, 199 (Pa. Super. 2007) (emphasis added; citation omitted). This Court has previously held that a mistrial is not required when there is a "singular, passing reference to prior criminal activity" at trial. ***Commonwealth v. Parker***, 957 A.2d 311, 319 (Pa. Super. 2008).

Upon review, we discern no abuse of the trial court's discretion in denying Appellant's motion for mistrial. Varesko's improper remark was a "singular, passing reference" and not intentionally elicited by the

- 19 -

Commonwealth. *See id.*; *Kerrigan*, *supra* at 199. Moreover, the trial court issued specific cautionary instructions to the jury (set forth above) regarding Varesko's remark and Appellant's prior conviction. *See* N.T., 1/22/20, at 62-63, 152-53. We must presume the jury followed these instructions. *Speight*, *supra* at 458. Accordingly, Appellant's claim lacks merit.

In his fifth issue, Appellant assails the trial court's denial of his motion for a mistrial during the prosecutor's closing argument. *See* Appellant's Brief at 23-26. Appellant challenges the following remark:

> Ladies and gentlemen, I submit to you [Appellant] is guilty of all of these crimes. He had a gun that night. And [Mr.] Varesko's lucky he didn't get shot. [Mr.] Varesko's lucky he got to come and testify today.

N.T., 7/28/20, at 226; *see also id.* (Appellant's counsel immediately objecting and requesting a mistrial at sidebar). The trial court declined to grant a mistrial, but gave the jury the following instruction:

> THE COURT: Ladies and gentlemen I'm going to … again remind you that the attorneys are obliged to present their argument in a light most favorable to … the side they represent. The [prosecutor] … exaggerated with regard to [Mr. Varesko] could've been shot *et cetera*. So, we would ask you to disregard that argument[.]

*Id.* at 227. Appellant asserts, "[n]o evidence was ever presented at trial of a loaded gun[, and] the Commonwealth put to the jury a significantly more serious situation than was presented in their case in chief. These statements were highly prejudicial to the Appellant." Appellant's Brief at 26. Appellant,

however, concedes the court instructed the jury to disregard the prosecutor's improper argument. *Id.* The Commonwealth responds:

> While in a vacuum, with only the charge of persons not to possess … firearms, [the prosecutor's] statement may have been an unreasonable inference and a prejudicial statement. However, that is not the case. Appellant was on trial, though not convicted, of multiple other crimes including aggravated assault [codified at] 18 [Pa.C.S.A.] § 2702(a)(4). This section specifically criminalizes an attempt to cause bodily injury to another with a deadly weapon.

Commonwealth Brief at 21.

"It is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence." *Commonwealth v. Holley*, 945 A.2d 241, 250 (Pa. Super. 2008). "The court must evaluate a prosecutor's challenged statement in the context in which it was made." *Commonwealth v. Hanible*, 30 A.3d 426, 465 (Pa. 2011). Not every intemperate or uncalled for remark by the prosecutor requires a new trial. *Commonwealth v. Cox*, 983 A.2d 666, 687 (Pa. 2009). Rather,

> [r]eversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.

*Id.*

Upon review, we conclude the trial court did not abuse its discretion in denying Appellant's motion for a mistrial where the prosecutor's remark did not have the unavoidable effect of unduly prejudicing the jurors. *See*, *e.g.*,

*Commonwealth v. Weiss*, 776 A.2d 958, 969 (Pa. 2001) (viewing prosecutor's closing remarks in their entirety did not have the unavoidable effect of prejudicing jury, and noting "[t]he prosecution, like the defense, is accorded reasonable latitude and **may employ oratorial flair** in arguing its version of the case to the jury." (emphasis added)). Further, the trial court specifically instructed the jury to disregard the prosecutor's remark. N.T., 7/28/20, at 226. We must presume the jury followed the instruction. *Speight*, *supra* at 458.

In his final issue, Appellant argues the trial court abused its discretion in imposing a sentence which is purportedly "against the weight of the evidence presented." Appellant's Brief at 26. Appellant contends his sentence, *i.e.*, 5-10 years' imprisonment, "was wholly unreasonable and an abuse of discretion given the testimony provided in support of a mitigated sentence." *Id.* at 28. Appellant maintains his probation officer at sentencing, "testified that the Appellant was cooperative in the [PSI] investigation, had previously sought drug and alcohol treatment to better himself …, and … had also been previously treated for a diagnosis of schizophrenia [for] which he was taking medication." *Id.* at 27-28.

Appellant challenges the discretionary aspects of sentencing. "The right to appellate review of the discretionary aspects of a sentence is not absolute[.]" *Commonwealth v. Fuentes*, 2022 PA Super. 43, *15 (Pa.

Super. 2022). Before we may reach the merits of a discretionary sentencing issue,

> we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Manivannan*, 186 A.3d 472, 489 (Pa. Super. 2018) (some citations omitted). Regarding the third factor, this Court explained:

> When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 812 A.2d 617, 621 (Pa. 2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa. Super. 2008) (emphasis in original) (internal quotation marks omitted).

*Manivannan*, 186 A.3d at 489 (citations modified).

In this case, though Appellant timely filed a notice of appeal and preserved his claim in a post-sentence motion, his brief lacks a Pa.R.A.P. 2119(f) statement. While the Commonwealth objected to Appellant's failure to properly develop and preserve his sentencing challenge, it did not specifically object to his omission of a Rule 2119(f) statement. *See* Commonwealth Brief at 22, 23; *cf. Commonwealth v. Griffin*, 149 A.3d 349,

- 23 -

353 (Pa. Super. 2016) ("**If the Commonwealth objects** to the appellant's failure to comply with [Rule] 2119(f), the sentencing claim is waived for purposes of review." (emphasis added; citation omitted)). Accordingly, we proceed to determine whether Appellant presents a substantial question for review. *Manivannan*, *supra* at 489. "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa. Super. 2015) (*en banc*) (citation omitted).

Appellant's general claim of an excessive sentence does not present a substantial question. *See*, *e.g.*, *Commonwealth v. Andrews*, 213 A.3d 1004, 1017 (Pa. Super. 2019) ("a generic claim that a sentence is excessive does not raise a substantial question for our review." (citation omitted)); *Caldwell*, 117 A.3d at 768 ("An appellant making an excessiveness claim raises a substantial question when he sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process."). Nevertheless, we discern no abuse of the trial court's discretion in imposing Appellant's **standard range** sentence, which is neither excessive nor unreasonable. *See*, *e.g.*, *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (stating that "where a sentence

is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code," and holding sentence was not unreasonable where trial court had benefit of PSI and imposed standard range sentence); ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009) (where sentencing court is informed by PSI, it is presumed the court is aware of all appropriate sentencing factors and considerations (including any mitigating factors, such as rehabilitation efforts), and "where the court has been so informed, its discretion should not be disturbed."). Here, the trial court explained it,

> considered the offense gravity score of the crime for which [Appellant] was convicted, [Appellant's] prior record score, and sentenced [Appellant] within the standard range of the sentencing guidelines. The [c]ourt did not sentence [Appellant] in the mitigated or aggravated range of the sentencing guidelines, as we found no factors to support deviation from the standard guidelines.

Trial Court Opinion, 6/25/21, at 15; ***see also*** N.T., 7/28/20, at 21 (stating reasons for sentence). Appellant's final claim does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/2022

- 25 -